Mark D. Parker
Casey Heitz
**PARKER, HEITZ & COSGROVE, PLLC**
401 N. 31st Street, Suite 805
P.O. Box 7212
Billings, Montana 59103-7212
Telephone:   (406) 245-9991
Facsimile:   (406) 245-0971
markdavidparker@parker-law.com
caseyheitz@parker-law.com

David A. Gauntlett
James A. Lowe
Raymond K. Chan
**GAUNTLETT & ASSOCIATES**
18400 Von Karman, Suite 300
Irvine, California  92612
Telephone:   (949) 553-1010
Facsimile:   (949) 553-2050
info@gauntlettlaw.com
jal@gauntlettlaw.com
rkc@gauntlettlaw.com

Attorneys for Defendant, Morgan Drexen, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| **TAMEE WARD and JOSH WARD**, individually and on behalf of a Class of similarly situated individuals,<br><br>    Plaintiffs,<br><br>        vs.<br><br>**MORGAN DREXEN, INC. and JOHN DOES I through L**,<br><br>    Defendants. | Cause No.: CV-09-164-BLG-RFC-CSO<br><br>**BRIEF IN SUPPORT OF MORGAN DREXEN'S RULE 12 MOTION TO STRIKE AND DISMISS** |

# TABLE OF CONTENTS

**Page(s)**

I.   **INTRODUCTION** ............................................................................1

II.  **THE IMMATERIAL, IMPERTINENT AND SCANDALOUS ALLEGATIONS IN THE FAC SHOULD BE STRICKEN** ....................2

    A.   **Plaintiffs' Scurrilous Allegations Serve No Purpose Other Than to Prejudice Morgan Drexen**...................................................2

    B.   **Legal Standards**.................................................................................2

    C.   **Specific Allegations Should Be Stricken from FAC**.........................3

        1.   The Court Should Strike Allegations About a Prior FTC Action ....................................................................................3

        2.   The Court Should Strike Allegations About Investigations of Morgan Drexen by Federal and State Agencies ...............5

            a.   Allegations About Unauthorized Practice of Law Are Immaterial and Should Be Struck Under Rule 12(f) .............................................................5

            b.   The Investigations Are Immaterial as They Were Not Adjudicated on the Merits............................6

        3.   The Court Should Strike Allegations About a Better Business Bureau Rating................................................................7

        4.   The Court Should Strike Allegations About a Prior FTC Action ....................................................................................7

III. **THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED** ........................................................................................7

    A.   **Neither Cause of Action States a Plausible Claim** ...........................7

    B.   **Legal Standards**.................................................................................8

    C.   **The RICO Cause of Action Should Be Dismissed**............................9

        1.   Plaintiffs Do Not Plead Fraud with Required Particularity.9

        2.   The Exhibits Contradict Plaintiffs' Fraud Claims ..............11

        3.   Plaintiffs Fail to Plead Specific Intent to Commit Mail or Wire Fraud ......................................................................13

        4.   Dismissal Without Leave to Amend Is Warranted..............14

i

**D.**   **The CROA Cause of Action Should Be Dismissed**........................14

    **1.**   **The FAC Allegations Do Not Plausibly Show that Morgan Drexen Is a Credit Repair Organization** .............................14

    **2.**   **Plaintiffs Have Not Plausibly Pled Any Fraud or Deception Under the CROA**....................................................................16

    **3.**   **Plaintiffs Cannot Plausibly Claim Injury**............................18

    **4.**   **Plaintiffs Have No Standing to Pursue a CROA Claim** ......19

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*In re 2TheMart.com, Inc. Securities Litigation*,
  114 F. Supp. 2d 955 (C.D. Cal. 2000) ................................................................2

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009)..............................................................................8, 19

*Bonanno v. Thomas*,
  309 F.2d 320 (9th Cir. 1962) ...........................................................................14

*Fantasy, Inc. v. Fogerty*,
  984 F.2d 1524 (9th Cir. 1993), *reversed on other grounds*, 510 U.S. 517
  (1994) .............................................................................................2, 4, 6

*Gotlin v. Lederman*,
  367 F. Supp. 2d 349 (E.D.N.Y. 2005) .................................................................4

*Helms v. Consumerinfo.com, Inc.*,
  436 F. Supp. 2d 1220 (N.D. Ala. 2005)..............................................................19

*Hillis v. Equifax Consumer Services, Inc.*,
  237 F.R.D. 491 (N.D. Ga. 2006) ..............................................14, 15, 18, 20

*Lancaster Community Hospital v. Antelope Valley Hospital District*,
  940 F.2d 397 (9th Cir. 1991) .............................................................................9

*Leis v. Flynt*,
  439 U.S. 438 (1979)...........................................................................................5

*Lipsky v. Commonwealth United Corp.*,
  551 F.2d 887 (2d Cir. 1976) ...........................................................................3, 4

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..........................................................................................20

*Natural Resources Defense Council v. United States E.P.A.*,
  542 F.3d 1235 (9th Cir. 2008) .........................................................................19

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) ...............................................................9

*Plattner v. Edge Solutions, Inc.*,
    422 F. Supp. 2d 969 (N.D. Ill. 2006)...........................................14, 15

*Polacsek v. Debticated Consumer Counseling, Inc.*,
    413 F. Supp. 2d 539 (D. Md. 2005)...................................................16

*Shreiber Distributing Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986) ....................................................13, 17

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ...............................................................8

*Sumner Peck Ranch, Inc. v. Bureau of Reclamation*,
    823 F. Supp. 715 (E.D. Cal. 1993) ......................................................8


STATE CASES

*Montana Supreme Court Comm'n on Unauthorized Practice of Law v. O'Neill*,
    334 Mont. 311 (2006) ...........................................................................5


DOCKETED CASES

*Armentero v. Sisto*,
    No. 2:08-cv-01716-MSB, 2009 WL 4282049 (E.D. Cal. Nov. 24, 2009) .........12

*Gamble v. GMAC Mortgage Corp.*,
    No. C-08-05532 RMW, 2009 WL 400359 (N.D. Cal. Feb. 18, 2009)................8

*Gonzales v. Mahoney*,
    No. CV09-01-H-DWM-RKS, 2009 WL 2940072 (D. Mont. Sept. 8, 2009) ............................................................................13

*Kauinui v. Citibank (South Dakota), N.A.*,
    No. 09-000258 ACK-BMK, 2009 WL 3530373 (D. Haw. Oct. 28, 2009)........13

*Reyes v. Saxon Mortgage Services, Inc.*,
No. 09cv1366 DMS (WMC), 2009 WL 3738177 (S.D. Cal. Nov. 5,
2009) ................................................................................................13

## FEDERAL RULES AND STATUTES

15 U.S.C. § 1679a(3)(A) ...............................................................14

15 U.S.C. § 1679b(a)(4) ...........................................................16, 19

15 U.S.C. § 1679c .......................................................................17

28 U.S.C. § 1341 ...........................................................................9

28 U.S.C. § 1343 ...........................................................................9

Fed. R. Civ. P. 9(b) .......................................................................9

Fed. R. Civ. P. 12 .......................................................................10

Fed. R. Civ. P. 12(b)(1) ...............................................................20

Fed. R. Civ. P. 12(b)(6) ............................................................1, 19

Fed. R. Civ. P. 12(f) ..............................................................1, 2, 5

Fed. R. Evid. 408 ..........................................................................3

Local Rule 7.1(d)(2)(E) ................................................................21

*Rules on Unauthorized Practice of Law by the Montana Supreme Court
Comm'n on Unauthorized Practice of Law*, Rule 8 ...........................6

## OTHER AUTHORITIES

Wright & Miller, *Federal Practice and Procedure* § 1363 (3rd ed. 2004) ..............8

v

## I.     INTRODUCTION

At no time did Plaintiffs or their counsel make any formal or informal inquiries to Morgan Drexen to substantiate any of the factual allegations in their complaint.  Nor did Plaintiffs make any effort to inquire about the context of their allegations to determine whether any possible relief could be predicated thereon. Instead Plaintiffs had their story in the Billings Gazette *within a day* of filing the First Amended Complaint ("FAC"), heralding their allegations to the press and the public long before Morgan Drexen and others accused of complicity but not named as defendants learned of those allegations.[1]

The FAC contains plenty of fodder for the press but does little to define what is at issue in this case or to set forth a proper claim for relief.

Morgan Drexen respectfully moves the Court to prune the FAC by first striking scurrilous and immaterial allegations under Rule 12(f).  These include various alleged investigations of Morgan Drexen and others, an alleged rating by a Better Business Bureau, and references to Montana and out-of-state attorneys using Morgan Drexen's services as "rent-a-lawyer[s]."   Once shorn of impertinent allegations, the Court can then determine whether Plaintiffs' claims of fraud are plausible and pled with the requisite particularity.  Morgan Drexen submits that the FAC fails to meet federal pleading standards and respectfully moves the Court to dismiss the FAC under Rule 12(b)(6).

---

[1]When Morgan Drexen sought an extension of time to respond to the FAC, Plaintiffs' counsel conditioned his consent to the request upon Morgan Drexen's agreement *not* to file a Rule 11 motion.

## II.   THE IMMATERIAL, IMPERTINENT AND SCANDALOUS ALLEGATIONS IN THE FAC SHOULD BE STRICKEN

### A.   Plaintiffs' Scurrilous Allegations Serve No Purpose Other Than to Prejudice Morgan Drexen

Plaintiffs allege various immaterial, impertinent and scandalous allegations that serve no purpose other than to "tar and feather" Morgan Drexen before the Court.  These allegations include (1) a prior FTC action against Morgan Drexen's founder, Walter Ledda, (2) various "investigations" of Morgan Drexen by federal and state agencies, (3) an "F" rating by a Better Business Bureau, and (4) labeling attorneys using Morgan Drexen's services as "rent-a-lawyer[s]."  Although these allegations would also be subject to motions *in limine* to preclude their introduction at trial, striking them now would drastically reduce their prejudicial effect; Plaintiffs otherwise would undoubtedly repeat these allegations in the press, in discovery and in motion practice and they would prejudicially infect and confuse pre-trial actions in this case wasting time of the Court and parties.

### B.   Legal Standards

"The court may strike from a pleading … any … immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded.  Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question."  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (citations omitted), *reversed on other grounds*, 510 U.S. 517, 534-35 (1994).  "Scandalous includes allegations that cast a cruelly derogatory light on a party or other person."  *In re 2TheMart.com, Inc. Securities Litigation*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). These standards mandate striking assorted statements in the FAC.

### C.      Specific Allegations Should Be Stricken from FAC

#### 1.      The Court Should Strike Allegations About a Prior FTC Action

The Court should strike allegations regarding a prior FTC action against Ledda and the National Consumer Council ("NCC").  FAC, ¶¶ 12-13.

Plaintiffs allege that NCC engaged in "aggressive telemarketing and direct mail advertising" campaign to make false and deceptive claims about its debt negotiation program.  *Id*. at ¶ 12.  The Plaintiffs then conclude that "Ledda founded Morgan Drexen with the purpose and goal of continuing the same scheme of aggressively targeting and marketing debt negotiation services to vulnerable consumers."  *Id*. at ¶ 13.   Other than conclusory and scandalous accusations, Plaintiffs do not allege any connection between the prior FTC action and this case.  Plaintiffs do not allege that similar conduct is involved or that similar representations were made to market debt settlement services.   These improper allegations concern a different entity that occurred over five years ago and have no relevance to the issues in this case.  The allegations simply cast a derogatory light on Ledda and by extension on Morgan Drexen.  Of course Ledda is not named as a defendant in the FAC and is not able to defend himself here.

Plaintiffs concede that the prior FTC action against Ledda and NCC was settled, not decided on the merits.  *Id*. at ¶ 12.  A "consent judgment between a federal agency and a private corporation which is not the result of an actual adjudication on any of the issues … can not be used as evidence in subsequent litigation between that corporation and another party."  *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (citing Fed. R. Evid. 410).[2]  Any connection here to the prior FTC action is even more tenuous as it involved a different entity.  Because such a consent judgment "can have no possible bearing

---

[2]*See also* Fed. R. Evid. 408 (barring the use of evidence of furnishing a valuable consideration to compromise a disputed claim to prove the validity of the claim).

on the [later] action," both the consent judgment and the preceding complaint by the federal agency are "immaterial for the purposes of Rule 12(f)." *Id*. at 894.

The Court should strike the allegations regarding the prior FTC action even if they were somehow relevant to this action because that action did not involve an adjudication on the merits.

> [E]ven if those allegations were relevant, courts hold that references in pleadings to administrative investigations that do not result in adjudication of underlying issues are immaterial and can properly be stricken under Rule 12(f).

*Gotlin v. Lederman*, 367 F. Supp. 2d 349, 363 (E.D.N.Y. 2005).  Here, there is all the more reason to strike these allegations, as their inclusion serves no purpose other than to cast Morgan Drexen and Ledda in a negative light.

In the *Fantasy* case, Fogerty alleged in a claim against Fantasy conduct by Fantasy's predecessor-in-interest in an earlier action, arguing that the allegations presented " 'relevant background and foundational facts' establishing a pattern of abuse to support his claim." *Fantasy*, 984 F.2d 1527-28.  The district court struck the allegations and the Ninth Circuit affirmed, holding that the prior conduct of a predecessor-in-interest was not relevant to the plaintiff's claim.  It also emphasized that the allegations "created serious risks of prejudice to Fantasy, delay and confusion of the issues . . . [and a] strong likelihood that evidence of the [previous] disputes between Fogerty and [Fantasy's predecessor] would lead to unwarranted and prejudicial inferences against Fantasy." *Id*. at 1528.

As in *Fantasy*, Plaintiffs allege a prior action against Ledda and NCC under the guise of "background" to cast aspersions on Morgan Drexen even though NCC is not alleged to be a predecessor-in-interest to Morgan Drexen.  These allegations likewise create a serious risk of prejudice to Morgan Drexen, delay and confusion of the issues, and a strong likelihood of unwarranted and prejudicial inferences

4

being drawn against Morgan Drexen.  The Court should follow *Fantasy* and strike Plaintiffs' allegations regarding the prior FTC action against Ledda and NCC.

### 2. The Court Should Strike Allegations About Investigations of Morgan Drexen by Federal and State Agencies

The Court should also strike allegations regarding various investigations of Morgan Drexen by federal and state agencies.  FAC, ¶¶ 21-23.

Plaintiffs allege that the North Carolina State Bar found that Morgan Drexen "engaged in the unauthorized practice of law," and that it settled by agreeing to cease taking on customers in that state.  *Id.* at ¶ 21.  They also allege that the North Carolina Attorney General, the FTC, and the DOJ charged Morgan Drexen in "Operation Short Change," without describing the charges against Morgan Drexen or what, if anything, became of them.  *Id.* at ¶ 22.  Additionally, Plaintiffs baldly allege that the FTC is "actively investigating" Morgan Drexen based on "hundreds of consumer complaints."  *Id.* at ¶ 23.

### a. Allegations About Unauthorized Practice of Law Are Immaterial and Should Be Struck Under Rule 12(f)

Only a state's highest court can determine what constitutes the practice of law and the unauthorized practice of law.  *See Leis v. Flynt*, 439 U.S. 438, 442 (1979) ("Since the founding of the Republic, the licensing and regulation of lawyers has been left exclusively to the States."); *Montana Supreme Court Comm'n on Unauthorized Practice of Law v. O'Neill*, 334 Mont. 311, 329 (2006). What constitutes the unauthorized practice of law differs from state to state, and any alleged finding by the North Carolina State Bar has no relevance here.

In addition to the reference to the North Carolina State Bar investigation, Plaintiffs repeatedly accuse Morgan Drexen and/or Howard | Nassiri of engaging in the unauthorized practice of law.  FAC, ¶¶ 1, 5, 15, 19, 21 & 60.  First, there is no private right of action to pursue a claim regarding an unauthorized practice of

law.  *See Rules on Unauthorized Practice of Law by the Montana Supreme Court Comm'n on Unauthorized Practice of Law*, Rule 8.[3]  And this Court does not have jurisdiction to hear such a claim; only the Montana Supreme Court does.  So inclusion of the allegations here serves no proper purpose.

In any case, the allegations regarding the unauthorized practice of law are irrelevant to Plaintiffs' actual claims under RICO or the CROA, which are based upon Morgan Drexen's alleged representations regardless of whether the representations constitute the unauthorized practice of law.  Permitting allegations about the unauthorized practice of law to remain will only confuse the issues.  *See Fantasy*, 984 F.2d at 1528 (affirming a motion to strike "for the purpose of streamlining the ultimate resolution of the action and focusing the jury's attention on the real issues in the case").  The Court should strike all references to any alleged unauthorized practice of law.

### b.  The Investigations Are Immaterial as They Were Not Adjudicated on the Merits

The investigation by the North Carolina State Bar, according to Plaintiffs allegations, resulted in a settlement.  FAC, ¶ 21 ("Morgan Drexen agreed as part of the action to cease taking on North Carolina customers.").  Plaintiffs only allege that Morgan Drexen was "charged as part of Operation Short Change."  *Id*. at ¶ 22.  The alleged FTC investigation is only alleged to be an investigation.[4]  *Id*. at ¶ 23.  None of these alleged investigations resulted in any adjudication on the merits.  As discussed above, allegations regarding prior actions that did not involve any

---

[3]http://www.montanabar.org/associations/7121/files/uplrules.pdf

[4]If Plaintiffs' counsel had done a simple search for "Morgan Drexen" on the FTC website, they would have found that there is no "active investigation." Rather, the FTC is seeking public comments in connection with debt settlement and debt relief services, and Morgan Drexen and others have submitted comments.
http://www.ftc.gov/os/comments/debtsettlementworkshop/index.shtm
http://www.ftc.gov/os/comments/tsrdebtrelief/index.shtm

adjudication on the merits are immaterial, confusing and unduly prejudicial.  They should be struck.

### 3.   The Court Should Strike Allegations About a Better Business Bureau Rating

Plaintiffs make reference to an alleged rating of Morgan Drexen by some Better Business Bureau.  FAC, ¶ 20.  This allegation is immaterial and impertinent to the claims at issue here and serves no purpose other than to cast a derogatory light on Morgan Drexen.  Even if this allegation could be backed up by materials from a Better Business Bureau, such materials would be inadmissible hearsay.  This lawsuit does not concern Better Business Bureau ratings and this Court cannot adjudicate such allegations.  Thus, the Court should also strike this allegation.

### 4.   The Court Should Strike Allegations About "Rent-a-Lawyers"

The Court should strike references to Montana and out-of-state attorneys using Morgan Drexen's services as "rent-a-lawyer[s]."  *See*, *e.g.*, FAC, ¶¶ 16 & 25.  Such derogatory references have no place in this proceeding.

## III.   THE FIRST AMENDED COMPLAINT SHOULD BE DISMISSED

### A.   Neither Cause of Action States a Plausible Claim

The Plaintiffs fail to plead sufficient facts to support either the RICO or the CROA claims against Morgan Drexen.  Instead, the Plaintiffs make assumptions assert conclusions unsupported by factual allegations.  The FAC starts with the assumption that Morgan Drexen harmed the Plaintiffs but then it fails to allege facts that can plausibly lead to that conclusion. Assumptions, conclusions, and arguments must be disregarded in evaluating the sufficiency of a federal complaint.

Even assuming all *facts* pled are true, the FAC does not allege sufficient facts to establish a plausible claim on its face.  Additionally, exhibits attached to

the complaint contradict many allegations.  The exhibits control, further weakening the FAC.

## B.    Legal Standards

Pleading requirements have been tightened in the past three years.   To survive a motion to dismiss, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court is not required to accept as true allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Legal conclusions, including those couched as factual allegations, are not entitled to the assumption of truth in a motion to dismiss.  *Iqbal*, 129 S. Ct. at 1949-50.  Under *Twombly* and *Iqbal*, a plausible complaint must allege facts that are more than "merely consistent with" a defendant's liability.  *Id*. at 1949.  To be entitled to relief, the complaint must set forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.

Additionally, "[i]n deciding a motion to dismiss … the court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint."  *Sumner Peck Ranch, Inc. v. Bureau of Reclamation*, 823 F. Supp. 715, 719-20 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987)).  "The district court will not accept as true pleading allegations that are contradicted by facts that can be judicially noticed or by other allegations or exhibits attached to or incorporated in the pleading."  5C Wright & Miller, *Federal Practice and Procedure* § 1363 (3rd ed. 2004); *see also Gamble v. GMAC Mortgage Corp.*, No. C-08-05532 RMW, 2009 WL 400359, at

*3 (N.D. Cal. Feb. 18, 2009) ("Where an exhibit to a pleading is inconsistent with the pleading, the exhibit controls.").

### C.     The RICO Cause of Action Should Be Dismissed

#### 1.     Plaintiffs Do Not Plead Fraud with Required Particularity

Plaintiffs allege mail and wire fraud (i.e., violations of 28 U.S.C. §§ 1341 & 1343, respectively) as the predicate acts supporting their RICO cause of action. FAC, ¶ 49.  But they fail to plead that fraud with particularity.[5]  Instead, they base their fraud claims on conclusory statements couched as factual allegations that are not supported by the actual factual allegations in the FAC.[6]

Plaintiffs claim a "scheme by Morgan Drexen … to defraud consumers into contracting to pay and into paying for the worthless debt settlement services." FAC, ¶ 49.  They claim Morgan Drexen misled "consumers" into believing that it could settle their debts "faster" and for "a significant discount from [the] face value" of the debt:

> The pitch used in the solicitations *creates the impression* that the service will be helpful and valuable because, as presented, it will allow the consumers to satisfy their debts for a significant discount from face value faster than they could if they paid the debts in full.

FAC, ¶ 26 (emphasis added).  This allegation is wholly conclusory.  The Plaintiffs never explain *how* Morgan Drexen misled any consumers including the Plaintiffs.

---

[5]Mail and wire fraud, like all fraud claims, must be pled with "particularity" pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.  *Lancaster Community Hospital v. Antelope Valley Hospital District*, 940 F.2d 397, 405 (9th Cir. 1991); *Odom v. Microsoft Corp.*, 486 F.3d 541, 554-55 (9th Cir. 2007).

[6]A copy of the FAC underlining Plaintiffs' actual factual allegations (as opposed to conclusory allegations) is attached as Exhibit 1 to the Declaration of James A. Lowe in support of this motion.  To help the Court more readily identify factual allegations in the FAC, Morgan Drexen is concurrently providing a courtesy copy in which black underlining has been replaced by yellow highlighting.

Instead, Plaintiffs only allege that Morgan Drexen represented that it could help a consumer eliminate her debt:

> In the telephone call, Morgan Drexen tells the consumer that Morgan Drexen provides a service to assist the consumer with her debt and that, with the services of Morgan Drexen, the consumer will be able to eliminate her debt.

*Id.*

Nowhere do Plaintiffs explain how telling a consumer that Morgan Drexen will assist her to eliminate her debt (accepting the factual allegation as true under Rule 12) "creates an impression" that she can satisfy her debt faster or for a significant discount from face value. Plaintiffs have not pled any representation by Morgan Drexen that would plausibly create such an impression. Even the alleged representation Morgan Drexen made to solicit the Wards does not support their claim of fraud:

> Using a solicitation pitch like that described above in this Complaint, the Morgan Drexen representative promised the Wards that through Morgan Drexen's unique debt negotiation services, they would be able to *pay off their creditors and get out of debt.*

*Id.* at ¶ 32 (emphasis added). According to the FAC, Morgan Drexen merely told Plaintiffs that they can pay off their creditors and get out of debt through its service. Again, there was no mention of "a significant discount from face value" or any other factual allegation that support the unwarranted inference that Morgan Drexen fraudulently promised a significant discount to promote its services.[7]

Plaintiffs' claim that Morgan Drexen fraudulently "creates an impression" that it can help a consumer satisfy her debt for a significant discount from its face value is just a conclusory allegation that is not supported by any factual allegations

---

[7]In fact, the fee agreement attached to the FAC expressly disclaims any "discount" by stating: "We make no assurance that Attorneys will negotiate a reduced Debt amount." Doc. 8-1, p. 14.

but appears contradicted by the specific fact allegations.  The Plaintiffs' conclusory allegations are not entitled to the assumption of truth in this motion.  Plaintiffs simply have not pled a fraud claim that is entitled to relief.

### 2.    The Exhibits Contradict Plaintiffs' Fraud Claims

Even if the conclusory statements Plaintiffs make in support of their fraud claims were given the benefit of the doubt and treated as factual allegations, those statements are clearly contradicted by correspondence from Morgan Drexen and Howard | Nassiri attached as exhibits to the FAC.[8]  Plaintiffs' fraud claims fail as a matter of law because the facts show no fraud.

A May 13, 2008 letter from Morgan Drexen set forth both Plaintiffs' total debt and the "discount" or reduction from the face value thereof that they could expect by enrolling in the debt settlement program.  FAC, ¶ 33; Doc. 8-1, p. 16.  Howard | Nassiri's fee agreement likewise stated the fees for the program.  *Id*. at ¶ 34(b); Doc. 8-1, p. 14.  Plaintiffs do *not* allege that Morgan Drexen misstated any of these amounts.  Rather, they claim to have decided, *in hindsight*, that the ratio of the "discount" to the fees no longer seems to be a good "value" to them.[9]  But this does *not* mean that Morgan Drexen (or anyone else) defrauded them.

Plaintiffs also allege that their installment payments "were supposed to be held in trust until sufficient funds accumulated to pay [their] creditors," rather than being "first allocated to the Defendants' fees."  *Id*. at ¶ 35.  They further alleged that "the money they thought was being used to pay off their debts was being kept by the Defendants instead."  *Id*. at ¶ 43.  But Plaintiffs do *not* allege that Morgan

---

[8]In addition to these written disclosures, Plaintiffs made recorded statements that they understood and agreed to the debt settlement program and the scope of their representation by Howard | Nassiri and its local counsel.  But such evidence is not relied on here.

[9]*See*, *e.g.*, FAC, ¶ 1 (alleging that Defendants charged "exorbitant rates") & ¶ 46 (alleging that Defendants sold services "at inflated and unfair prices").

Drexen misrepresented the allocation of their installment payments.  Nor can they do so because these allegations are also expressly contradicted by the exhibits. First, the fee agreement states that "[t]hese monthly installments shall first be used to pay the fees described below."  Doc. 8-1, p. 14.  Then a letter dated June 19, 2008 from Morgan Drexen to Plaintiffs expressly states that Morgan Drexen "will not be making monthly payments on your accounts."  Doc. 8-1, p. 18.

Plaintiffs also claim they were defrauded because Morgan Drexen stated that Howard | Nassiri would be representing them, but "no lawyer … from Howard | Nassiri … ever communicated with any creditor of [Plaintiffs]."  FAC, ¶¶ 34 & 39. This claim is also contradicted by the FAC exhibits, including (i) a letter from Howard | Nassiri to Plaintiffs enclosing a letter sent to their creditor's attorney, and (ii) another letter from Howard | Nassiri to the same attorney offering to settle their debt.  Doc. 8-1, pp. 19-22.  Plaintiffs claim fraud because Howard | Nassiri delegated the mailing of the second letter to Morgan Drexen.  But Howard | Nassiri expressly disclosed its use of outside services in its fee agreement and obtained Plaintiffs' consent to do so.  Doc. 8-1, p. 13.

Neither Morgan Drexen nor Howard | Nassiri misrepresented the scope of the latter's services according to the Plaintiffs' own FAC exhibits, contradictory conclusions notwithstanding.

Even in the light most favorable to Plaintiffs, the FAC merely alleges a case of buyer's remorse, not fraud.  To survive a motion to dismiss, a complaint must be plausible on its face, that is, it must include facts that would allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal* at 1949.  To determine plausibility, courts also look at any exhibits attached

to the complaint.[10]   The exhibits to the FAC simply do not allow a reasonable inference of fraud because they simply contradict Plaintiffs' claims of fraud.

### 3.    Plaintiffs Fail to Plead Specific Intent to Commit Mail or Wire Fraud

"To allege a violation of the mail fraud statute, it is necessary to show that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the *specific intent* to deceive or defraud." *Shreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1399-1400 (9th Cir. 1986) (emphasis added).  Wire fraud has the same elements except it involves the use of United States wires instead.  *Id.* at 1400.

Specific intent is a requisite element in both mail and wire fraud.  It may be shown by "the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension."  *Shreiber*, 806 F.2d at 1400 (citing *United States v. Green*, 745 F.2d 1205, 1207 (9th Cir. 1984).  Plaintiffs have not pled specific intent in the FAC and it cannot be assumed.

Additionally the factual allegations in the FAC and its exhibits do not support claims of fraud or the existence of a scheme reasonably calculated to deceive.  Thus Plaintiffs have not pled a mail or wire fraud claim necessary to maintain their RICO cause of action.

---

[10]*See*, *e.g.*, *Armentero v. Sisto*, No. 2:08-cv-01716-MSB, 2009 WL 4282049, at *4 (E.D. Cal. Nov. 24, 2009) (claim for violation of Eighth Amendment not plausible in view of medical records attached to complaint); *Reyes v. Saxon Mortgage Services, Inc.*, No. 09cv1366 DMS (WMC), 2009 WL 3738177, at *2 (S.D. Cal. Nov. 5, 2009) (claim for breach of contract under a third party beneficiary theory plausible in view of copy of contract attached to complaint); *Kauinui v. Citibank (South Dakota), N.A.*, No. 09-000258 ACK-BMK, 2009 WL 3530373, at *4 (D. Haw. Oct. 28, 2009) (claim for violation of Truth in Lending Act plausible in view of periodic billing statement attached to complaint); *Gonzales v. Mahoney*, No. CV09-01-H-DWM-RKS, 2009 WL 2940072, at *7 (D. Mont. Sept. 8, 2009) (claim of deliberate indifference not plausible in view of documents attached to complaint).

### 4.    Dismissal Without Leave to Amend Is Warranted

Leave to amend a complaint should ordinarily be granted "unless the court determined that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962). The exhibits to the FAC demonstrate that all the terms of the debt settlement program about which Plaintiffs complain, including the fees and the expected reduction from the face value of their debt, were expressly disclosed to Plaintiffs. No amendment by Plaintiffs can possibly reconcile the incongruity between their claims of fraud and those exhibits. Therefore, their RICO cause of action should be dismissed without leave to amend.

### D.    The CROA Cause of Action Should Be Dismissed

#### 1.    The FAC Allegations Do Not Plausibly Show that Morgan Drexen Is a Credit Repair Organization

The factual allegations in the FAC do not plausibly establish that Morgan Drexen is a credit repair organization. Pursuant to the Credit Repair Organization Act ("CROA") a credit repair organization ("CRO") is:

> any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving any consumer's credit record, credit history, or credit rating.

15 U.S.C. § 1679a(3)(A). Plaintiffs conclusorily allege that Morgan Drexen is a CRO using words that parallel the above statutory language. FAC, ¶ 59. This, however, is not sufficient to plausibly establish that Morgan Drexen is a CRO. Calling a horse a cow does not make it so.

While this statutory language is broad, Congress did *not* intend the CROA to encompass any and all entities that sell services that touch on consumer credit matters. *See*, *e.g.*, *Plattner v. Edge Solutions, Inc.*, 422 F. Supp. 2d 969, 972-76

(N.D. Ill. 2006); *Hillis v. Equifax Consumer Services, Inc.*, 237 F.R.D. 491, 511-15 (N.D. Ga. 2006).   CROA's legislative history makes clear that Congress passed this statute to address a specific problem, i.e., when "businesses … lead consumers to believe that adverse information in their consumer [credit] reports can be deleted or modified regardless of its accuracy."  *Plattner*, 422 F. Supp. 2d at 973 (quoting H.R. Rep. No. 103-486 at 57 (1994)); *accord Hillis*, 237 F.R.D. at 512-514 (citing same House Report).

Plaintiffs do *not* allege that Morgan Drexen represented that it can delete or modify adverse entries on the Plaintiffs' credit report regardless of accuracy.  At most, the representations Plaintiffs attribute to Morgan Drexen suggest that a consumer may improve his credit score by engaging a debt settlement service to assist him to pay off his debt.  FAC, ¶ 59.  This suggestion that paying or settling one's debts can improve one's credit is intuitive and entirely reasonable, unlike the misleading representations about adverse credit report entries that the CROA was enacted to address.

"The Supreme Court has made clear that where legislative history focuses on Congress' intention to address a particular problem, the statute should be construed to apply to that problem and not to other issues that Congress expressed no intention to address."  *Hillis*, 237 F.R.D. at 514 (citing *General Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 587-94 (2004)).  Thus, the CROA should not be applied to Morgan Drexen's provision of debt settlement support services.

An entity is not a CRO merely because it sells a service and mentions an improvement in credit score in connection with its service.  Whether an entity is a CRO depends on *the* purpose of its service.[11]  *Hillis*, 237 F.R.D. at 517 (emphasis added):

---

[11]For example, if someone (i) offers to balance my checkbook for a fee so that I can keep better track of the funds in my checking account, and (ii) suggests that

> Notably, Plaintiff must show that **'the' – not 'a' purpose** of [the service sold by the defendant] was to improve a consumer's credit record.

*Accord Polacsek v. Debticated Consumer Counseling, Inc.*, 413 F. Supp. 2d 539, 546 (D. Md. 2005) ("Arguably an entity's credit repair activities will be so ancillary to its counseling activity as to be *de minimis* and therefore not subject to the CROA."). Plaintiffs consistently characterize the services offered by Morgan Drexen as debt settlement services[12] and allege that Morgan Drexen represented to consumers that it could help them pay off their debts.[13] The FAC makes clear that the purpose of the services offered by Morgan Drexen is debt settlement instead of "credit repair," despite Plaintiffs' attempt to shoehorn Morgan Drexen into the CROA. The factual allegations in the FAC do not plausibly establish that Morgan Drexen is a CRO.

### 2. Plaintiffs Have Not Plausibly Pled Any Fraud or Deception Under the CROA

Plaintiffs claim that Morgan Drexen violates the CROA by "engaging in deceptive and fraudulent acts." FAC, ¶ 60. The statute prohibits "any act, practice, or course of business that constitutes … a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization." 15 U.S.C. § 1679b(a)(4).

Plaintiffs list conclusory allegations alleged to constitute Morgan Drexen's "deceptive and fraudulent acts." FAC, ¶ 60. But they do not plead any facts that plausibly show that the alleged acts were fraudulent or deceptive.

---

doing so will minimize the number of checks I bounce and thus improve my credit score, that does not make him a CRO, because **the** purpose of his service is to help me manage my checking account. Any resulting improvement in my credit score would be an ancillary effect of his service.

[12] *See, e.g.*, FAC, ¶¶ 8, 11, 15, 16, 19, 32 & 49.

[13] *See, e.g.*, FAC, ¶¶ 26, 28 & 32.

Plaintiffs accuse Morgan Drexen of "the unauthorized practice of law." FAC, ¶ 60.  This allegation is entirely conclusory where Plaintiffs have not pled any facts that constitute the practice of law by Morgan Drexen.  Plaintiffs accuse Morgan Drexen of charging "predatory fees," without including any facts supporting this characterization.   And even if Morgan Drexen's fees were "predatory," Plaintiffs do not explain how charging such fees would be fraudulent or deceptive.

Plaintiffs further allege "unregulated debt negotiation services," without any supporting facts that would plausibly show that the alleged conduct was fraudulent or deceptive.  For example, Plaintiffs baldly allege that Morgan Drexen "falsely represent that a local lawyer will be providing legal services to the consumer." FAC, ¶ 60(a).  But they do not plead this alleged misrepresentation with any particularity.  *Shreiber*, 806 F.2d at 1401 ("[T]he pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.").

Plaintiffs also allege that Morgan Drexen failed to disclose that it is "a debt settlement firm subject to the CROA and regulations under the laws of many states" or that it does not have one or more licenses allegedly required to provide debt settlement services.  FAC, ¶¶ 60(a)-(b).  But Plaintiffs do not allege any fact that would make any such failure deceptive or fraudulent.  Nor can they do so, because such disclosures are not required by the CROA.  *Cf.* 15 U.S.C. § 1679c (listing the disclosures required by the CROA).

Plaintiffs also allege that Morgan Drexen misled consumers regarding the "value" of the services that they would receive.  FAC, ¶ 60(d).  But as discussed above, all the terms of the debt settlement program at issue were clearly disclosed to Plaintiffs and the facts alleged in the FAC do not plausibly support their claim of fraud.  While Plaintiffs now object to the use of form letters and their mailing by

Morgan Drexen, they do not allege any fact that would make such acts deceptive or fraudulent. Again, they cannot do so because Howard | Nassiri expressly disclosed its use of outside services in its fee agreement and obtained Plaintiffs' consent for such use.

Lastly, Plaintiffs allege that Morgan Drexen "charge fees before rendering any services" and "fail to make disclosures required by the CROA." FAC, ¶¶ 60(e)-(d).[14] Even assuming Morgan Drexen is a CRO, the alleged conduct would only be technical violations of the CROA, and would *not* rise to the level of fraud or deception under that statute. *Hillis*, 237 F.R.D. at 505-06 (citing *Helms v. Consumerinfo.com, Inc.*, 236 F.R.D. 561, 568-69 (N.D. Ala. 2005)).

### 3.  Plaintiffs Cannot Plausibly Claim Injury

Plaintiffs' claim that they were injured by Morgan Drexen's representations concerning an improvement in credit score is not plausible. Plaintiffs allege that Morgan Drexen is a CRO based on: (i) a November 29, 2009 press release; (ii) a statement on www.morgandrexennewyork.com; (iii) a statement in an unidentified Internet article; (iv) a statement on Morgan Drexen's blog; and (v) a statement on Howard | Nassiri's blog.[15] FAC, ¶ 59. However, Plaintiffs have *not* alleged that they actually saw any of the above before enrolling in the debt settlement program.[16] The Plaintiffs do not allege that they enrolled in the program because

---

[14]The second of the two subparagraphs (d) under paragraph 60 of the FAC.

[15]Among these, only the statements on www.morgandrexennewyork.com and Morgan Drexen's blog are actually alleged to contain any references by Morgan Drexen to an improvement in credit score. The November 29, 2009 press release compares the declines in credit scores between debt settlement and bankruptcy. The unidentified Internet article and the statement on Howard | Nassiri's blog are not attributed to Morgan Drexen.

[16]In fact, the November 29, 2009 press release occurred *after* Plaintiffs left the debt settlement program, so it can have no relevance whatsoever to their claims. *See* FAC, ¶¶ 41-42.

they were motivated to improve their credit score.  *Cf.* FAC at ¶ 33 (They instead refer only to their "desire to pay off their debts.").

Plaintiffs claim that Morgan Drexen violated the CROA by "engaging in deceptive and fraudulent acts."  The CROA prohibits "fraud or deception … in connection with the offer or sale of the services of the credit repair organization." 15 U.S.C. § 1679b(a)(4).  "[T]o succeed on a claim under § 1679b(a)(4), the Plaintiff must show individual reliance and damages, as would be required of a traditional fraud claim."  *Helms v. Consumerinfo.com, Inc.*, 436 F. Supp. 2d 1220, 1237 (N.D. Ala. 2005).  Plaintiffs cannot plausibly allege individual reliance without first alleging that they learned of the alleged representations about credit score improvement prior to enrolling in the debt settlement program.  Then the Plaintiffs would have to allege other facts that are simply inconsistent with their current fact allegations and FAC exhibits.

The FAC baldly alleges that Plaintiffs "have suffered damages as a result of Defendants' violations of the CROA," without explaining *how*.  FAC, ¶ 61.  Again, such an allegation is simply not plausible.  *Iqbal*, 129 S. Ct. at 1949 ("[T]he pleading standard Rule 8 announces … demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  Accordingly, their CROA cause of action should be dismissed under Rule 12(b)(6).

### 4.    Plaintiffs Have No Standing to Pursue a CROA Claim

Plaintiffs' bare allegations also raise an issue concerning their standing to pursue a claim under the CROA.  The party invoking federal jurisdiction bears the burden to show that it has "suffered an injury in fact" and that the injury is "fairly traceable to the challenged action of the defendant."  *Natural Resources Defense Council v. United States E.P.A.*, 542 F.3d 1235, 1244 (9th Cir. 2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Here, even

assuming, *arguendo*, that Morgan Drexen was a credit repair organization and also that it violated the CROA, Plaintiffs would *not* have standing to sue on such violations *unless* they actually learned of a representation by Morgan Drexen regarding an improvement in credit score. *Hillis*, 237 F.R.D. at 498-99:

> Plaintiff's position … that … once a defendant makes a misleading statement, liability [under the CROA] attaches without regard to whether a plaintiff saw or heard the statement … raises profound standing concerns.

The *Hillis* court further held that a private citizen, unlike the FTC, must show an injury-in-fact to bring suit to enforce the CROA. *Id*. at 499 n.7.

"[S]tanding is an essential and unchanging part of the case or controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Here, Plaintiffs do not have standing to sue on Morgan Drexen's alleged violations of the CROA. Their lack of standing deprives this Court of jurisdiction to even hear their CROA claims. Thus, their CROA cause of action should also be dismissed pursuant to Rule 12(b)(1).

/ / /

/ / /

/ / /

**Wherefore**, Defendant Morgan Drexen moves the Court to strike certain immaterial, impertinent and scandalous allegations from the First Amended Complaint and then dismiss both the RICO and CROA claims and the entire FAC without leave to amend.

Dated: February 26, 2010                **PARKER, HEITZ & COSGROVE, PLLC**

By:   /s/ Mark D. Parker
   Mark D. Parker
   Casey Heitz

**GAUNTLETT & ASSOCIATES**
David A. Gauntlett
James A. Lowe
Raymond K. Chan
18400 Von Karman, Suite 300
Irvine, California  92612

Attorneys for Defendant
MORGAN DREXEN, INC.

## CERTIFICATE OF COMPLIANCE

In accordance with Local Rule 7.1(d)(2)(E), the undersigned certifies that the attached brief has been prepared in 14 pt Times New Roman font, using Microsoft Office Word 2003.

This brief complies with Rule 7.1(d)(2)(E) in that it is a principal brief which contains, exclusive of portions excluded by that Rule, 6,201 words as calculated by the word count utility of Microsoft Office Word 2003, which was used to prepare the brief.

Dated: February 26, 2010   **PARKER, HEITZ & COSGROVE, PLLC**

By:___/s/ Mark D. Parker
  Mark D. Parker
  Casey Heitz

**GAUNTLETT & ASSOCIATES**
David A. Gauntlett
James A. Lowe
Raymond K. Chan
18400 Von Karman, Suite 300
Irvine, California  92612

Attorneys for Defendant
MORGAN DREXEN, INC.