IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| TAMEE WARD and JOSH WARD, individually and on behalf of a Class of similarly situated individuals,<br><br>          Plaintiffs,<br><br>vs.<br><br>MORGAN DREXEN, INC. and JOHN DOES 1 through L,<br><br>          Defendants. | CV-09-164-BLG-RFC-CSO<br><br>**FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE ON MORGAN DREXEN'S MOTION TO TRANSFER TO THE CENTRAL DISTRICT OF CALIFORNIA UNDER 28 U.S.C. § 1404** |

Plaintiffs Tamee Ward and Josh Ward ("Wards") initiated this putative class action lawsuit against Morgan Drexen, Inc. ("Morgan Drexen") and multiple "Doe" defendants alleging they violated "the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964 et seq. ("RICO") [Count I] and the Credit Repair Organizations Act, 15 U.S.C. § 1679 et seq. ("CROA") [Count II]."  First Am. Cmplt. (Court Doc. 8) at ¶¶ 1, 44-63.  Plaintiffs generally allege that Morgan Drexen and others:

1

> engage in a deceptive and predatory scheme to enrich
> themselves at the expense of financially vulnerable
> consumers by charging exorbitant rates to "negotiate"
> unsecured debts, the consequence of which is that creditors
> don't get paid and Defendants' "clients" are left with
> destroyed credit.  Defendants have actively conspired to
> circumvent and avoid laws governing debt settlement
> companies and credit repair organizations and have engaged
> in the unauthorized practice of law.

Id. at ¶ 1.

The Wards, on their own behalf and on behalf of the putative class, seek restitution, actual damages, statutory damages, punitive or trebled damages, costs and attorneys' fees, and "a declaration that all contracts entered by class members are void."  Id. at 31-32 (Prayer for Relief).

Now pending and ripe for ruling is Morgan Drexen's motion to transfer this action to the United States District Court for the Central District of California under 28 U.S.C. § 1404(a).  Having reviewed the briefs and other materials submitted, the Court issues these findings and recommendation.

## I.   **<u>BACKGROUND</u>**

The Wards generally allege[1] that Morgan Drexen and John Doe Defendants – along with non-parties Walter Ledda, Morgan Drexen's "principal and architect," and Howard | Nassiri, a California law firm – act or have acted in concert with one another conducting unlawful debt settlement activities throughout the United States.  Court Doc. 8 at ¶¶ 1, 3-6, 8, and 10-11.  The Wards allege that Morgan Drexen and the others engage in unlawful schemes to bilk indebted consumers for services purported to assist the consumers with debt management and negotiations with creditors.

More specifically, the Wards allege that Morgan Drexen: (1) targets and markets debt negotiation services to indebted consumers, id. at ¶ 13; (2) falsely promises the consumers the ability to eliminate debts and to stop creditors' collection efforts, id.; (3) circumvents state and

---

[1] The Court is mindful that Morgan Drexen disputes the Wards' allegations.  Morgan Drexen has pending a motion to dismiss and to strike, under Rule 12, Fed. R. Civ. P., that seeks, in part, an order striking "immaterial, impertinent and scandalous allegations in the First Amended Complaint."  Morgan Drexen's Mtn. to Dismiss and to Strike (Court Doc. 25).  The motion to dismiss and to strike is not ripe and the Court takes no position on it at this time.  The Court mentions the motion here only to note its understanding that Morgan Drexen disagrees with the Wards' characterization of the facts.

3

federal regulatory authority by billing itself to regulatory agencies and consumers as providing "legal support services" to debt negotiation lawyers, id. at ¶ 14; (4) has consumers enter into contracts with the Howard | Nassiri law firm and other lawyers, which Morgan Drexen then uses as "vehicle[s] to commit the unauthorized practice of law and illegal debt negotiation services[,]" id. at ¶¶ 15-16; (5) has the lawyers "from nearly every state in the country, including Montana[,]" "completely delegate authority and allow their law licenses to be used to facilitate Morgan Drexen's debt negotiation business without the lawyers' oversight[,]" id. at ¶ 16; (6) uses its network of "associate" lawyers to obtain prospective consumer clients, id. at ¶¶ 18-19; (7) ultimately controls the "associate" lawyers and the Howard | Nassiri law firm, including using them to allow it to "engage in standard activities constituting the performance of legal services and the practice of law," id. at ¶¶ 19-20; and (8) uses telemarketers and direct mail campaigns to solicit clients who are burdened by debt, id. at ¶¶ 25-29.

With respect to their own dealings with Morgan Drexen, the Wards allege that: (1) they accrued credit card debt that they failed to

pay; (2) a company purchased the debt from the creditor and then sued
Josh Ward for the value of the debt; (3) the debt buyer obtained a default
judgment against Josh Ward and attempted to execute on the judgment,
id. at ¶ 31; (4) a Morgan Drexen representative called the Wards within
two weeks of the attempt to execute on the judgment with a "solicitation
pitch" that "promised the Wards ... [that] they would be able to pay off
their creditors and get out of debt," id. at ¶ 32; (5) the Wards agreed to
hire Morgan Drexen, which then sent the Wards a letter explaining that,
because of their overall debt of $5,125, under Morgan Drexen's plan they
would make 39 monthly payments of $128 ($4,992 total), which would
save them $133, but Morgan Drexen's fee would be $2,500, id. at ¶ 33;
(6) Morgan Drexen sent the Wards another letter advising them that the
Howard | Nassiri law firm would represent them, but that Morgan
Drexen would remain their point of contact, id. at ¶ 34; (7) this mailing
included a contract purportedly between the Wards and the Howard |
Nassiri law firm allowing Morgan Drexen to "automatically withdraw
funds from the Wards' account and transfer them out of state via wire,"
and charge them fees including an "engagement fee" of $862.50, a

5

monthly fee of $48.00 to cover administrative costs, and a "contingent fee equal to 25% of the difference between the full amount demanded by your creditor at the time of settlement and the amount for which that account has settled[,]" id.; (8) from June 2008 through June 2009, Morgan Drexen withdrew from the Wards' bank account $174.47 each month to hold in trust to pay the Wards' creditors, but instead Morgan Drexen first used the funds to pay its own fees, id. at ¶ 35; (9) when the Wards spoke with their Morgan Drexen Montana lawyer, Blaine Bradshaw, he advised them to call the judgment creditor's attorney directly to negotiate their outstanding debt and told the Wards to direct further inquiries to Morgan Drexen, id. at ¶ 37; (10) from then on, Morgan Drexen, and not any attorney, corresponded with and otherwise dealt with the Wards' judgment creditor's attorney, id. at ¶¶ 38-39; (11) after the Wards terminated their contract with Morgan Drexen and demanded repayment of the money they paid Morgan Drexen, the Wards received a refund check from the Howard | Nassiri law firm for $593.76 even though they had paid Morgan Drexen and the Howard | Nassiri law firm more than $1,700, id. at ¶ 42; and (12) while Morgan

Drexen was representing them, the Wards "had their bank accounts garnished and were forced to pay post-judgment fees because the money they thought was being used to pay off their debts was being kept by [Morgan Drexen and/or the Doe Defendants] instead[,]" id. at ¶ 43.

The Wards filed this action on December 22, 2009. Cmplt. (Court Doc. 1). They claim that, through the activities described above, Morgan Drexen violated RICO, 18 U.S.C. § 1964 et seq. (Count I), and CROA, 15 U.S.C. § 1679 et seq. (Count II). Court Doc. 8 at ¶¶ 1, 44-63.

## II. <u>SUMMARY OF PARTIES' ARGUMENTS</u>

Morgan Drexen argues that, under 28 U.S.C. § 1404(a), transfer to the Central District of California is appropriate because: (1) it has jurisdiction over Morgan Drexen and venue is proper there, Defts' Br. (Court Doc. 29) at 7[2]; (2) California is more convenient than Montana for both the parties and witnesses because all, other than the Wards and Montana "associate" attorney Blaine Bradshaw, operate and reside in California, id. at 7, 9-13; (3) known documentary evidence is located in California, id. at 7; (4) the ordinary deference to a plaintiff's choice of

_____

[2]Page numbers herein refer to the number reflected on the Court's electronic filing system.

forum is lessened when plaintiff has filed a class action, id. at 9; and (5) the "interest of justice" factors weigh in favor of transfer, including that: (a) sources of proof are more readily available in California, id. at 13-14; (b) key witnesses are beyond this Court's subpoena power, id. at 14-15; (c) sending California witnesses to Montana would be unnecessarily costly and disruptive to Morgan Drexen's business operations, id. at 15; (d) having the jury view Morgan Drexen's California facility would be beneficial, id. at 16; (e) the Central District of California court disposes of civil cases more quickly than this Court, id. at 16-17; (f) California has a greater interest than Montana in this action, id. at 17-18; and (g) because only federal claims are made, there is no conflict of law issue, id. at 18.

In response, the Wards argue that Morgan Drexen has failed to carry its burden of demonstrating that transfer of the case is appropriate.  Wards' Resp. Br. (Court Doc. 35) at 4.  The Wards argue that: (1) their choice of forum is entitled to great weight, id. at 4-5; (2) because this case is a consumer class action and because they have significant contacts with the chosen forum, their choice of forum should

8

not be disturbed, id. at 5-6; (3) Morgan Drexen's transfer motion is its attempt to achieve a perceived "home court advantage," id. at 6-7; and (4) the balance of the factors to be considered weighs in favor of not transferring the case because: (a) the convenience of witnesses, availability of process to compel attendance of unwilling witnesses, and cost of obtaining willing witnesses weigh against transfer, id. at 8-10; (b) the relative ease of access to sources of proof weighs against transfer, id. at 10-11; (c) practical problems associated with trying the case most expeditiously and inexpensively are neutral with respect to transfer, id. at 11-12; (d) the possibility of reviewing the premises is neutral with respect to transfer, id. at 12; (e) public interest in having controversies decided in a particular location is neutral or inapplicable, id. at 13; and (f) this Court is not significantly slower than the Court in the Central District of California, id. at 13-14.

In reply, Morgan Drexen argues that justice requires transfer of this case because "most key witnesses are not subject to the subpoena power of this Court because they reside and work in the Central District of California." Deft's Reply Br. (Court Doc. 39) at 4. It notes that the

9

Wards claim that the Howard | Nassiri law firm plays a key role in the
alleged scheme, but argues that the Wards "have chosen ... not to sue
Howard Nassiri, and ... bring this suit in a forum that does not have
personal jurisdiction or subpoena power over Howard Nassiri."  Id. at 4-
5 (emphasis omitted).  The absence of the Howard | Nassiri law firm,
Moran Drexen argues, will severely prejudice its ability to defend itself.
Id.

Morgan Drexen further argues that: (1) the Court should afford the
Wards' choice of forum little weight since the operative facts have
nothing to do with Montana, id. at 5-7; (2) the Wards would not be
greatly inconvenienced if this matter is transferred because they already
have retained counsel from Texas and "modern telecommunication
technologies ... ease the burden of reproducing and transporting
documentary evidence," id. at 7-8; (3) most witnesses will benefit from
the convenience of a transfer of this case to the Central District of
California, id. at 8-9; (4) all evidence is located in the Central District of
California, id. at 9-10; and (5) there is no "home court advantage" for
Morgan Drexen in California because, "[i]f anything, the renowned

10

liberal disposition of California citizens and California juries is more likely to favor the consumer Plaintiffs rather than the corporate Defendant in this case[,]" id. at 10.

## III.   **APPLICABLE LAW**

28 U.S.C. § 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

This provision exists "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation and quotations omitted).  The party seeking transfer must show: "(1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses and will promote the interest of justice." *Kina v. United Air Lines, Inc.*, 2008 WL 5071045 at *4 (N.D. Cal. 2008) (citing *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F.Supp. 503, 506 (C.D. Cal. 1992)).

11

Courts enjoy discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Courts' analyses may include multiple factors, such as: "(1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum." *Kina v. United Air Lines, Inc.*, 2008 WL 5071045 at *5 (N.D. Cal. 2008) (citing *Williams v. Bowman*, 157 F.Supp.2d 1103, 1106 (N.D. Cal. 2001)). Other factors a court may consider, which the Court identifies by numbers sequential to those above, include: (9) "the location where relevant agreements were negotiated and executed," *Jones*, 211 F.3d at 498; (10) "the respective parties' contacts with the forum," *id*.; (11) "the contacts relating to the plaintiff's cause of action in the chosen forum," *id*.; (12) "the difference in the costs of litigation in the two forums," *id*. at

498-99; and (13) "the availability of compulsory process to compel attendance of unwilling non-party witnesses," *id*. at 499.  This array of factors reflects the Court's "broad discretion" in deciding motions to transfer.  *Id*. at 498; *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).  Also, "[w]eighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge."  *Id*.

The party seeking transfer bears the burden of demonstrating that application of the foregoing factors clearly favors transfer.  *Id*.  It is insufficient for the moving party merely to show that it prefers another forum.  *Van Dusen*, 376 U.S. at 645-46.  Also, transfer is inappropriate if the result simply shifts inconvenience from one party to another party.  *Id*.


IV.  **DISCUSSION**

There is no dispute that venue is proper in Montana, the so-called "transferor" district.  At least with respect to the Wards, Montana is "a judicial district in which a substantial part of the events or omissions

13

giving rise to the claim occurred[.]" 28 U.S.C. § 1391(b)(2).  Also, there is

no dispute that the Central District of California, the so-called

"transferee" district, is one where the action might have been brought.

Id.; 28 U.S.C. § 1391(c).

Thus, the Court must determine, applying the factors listed above,

whether transfer ""will serve the convenience of the parties and

witnesses and will promote the interest of justice."  *Kina,* 2008 WL

5071045 at *4.  Exercising its broad discretion to do so, the Court

concludes that transfer will serve those purposes and thus recommends

transfer.

### A.   <u>The Wards' Choice of Forum</u>

This factor is neutral with respect to transfer.  It is true that this

Court has noted that "a plaintiff's choice of forum should rarely be

disturbed" and that courts generally accord a plaintiff's forum choice

"substantial" weight.  *Anderson v. Thompson*, 634 F.Supp. 1201, 1204

(D. Mont. 1986).   But the Ninth Circuit has emphasized that a

plaintiff's choice "is not the final word."  *Pacific Car and Foundry Co. v.*

*Pence*, 403 F.2d 949, 954 (9th Cir. 1968).  "If the operative facts have not

occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration." *Id.* Also, "where the action is brought as a class action, Plaintiff's choice of forum is entitled to less weight." *Hines v. KFC U.S. Properties, Inc.*, 2010 WL 596439 at *3 (S.D. Cal. 2010) (citing *Lou v. Belzerg*, 834 F.2d 730, 739 (9th Cir. 1987)).

Here, the Wards bring this case as a putative class action. While some of the operative facts involving their claims occurred, at least in part, in Montana, Morgan Drexen's presence nationally allows a reasonable assumption that many, if not most, other operative facts involving putative class members occurred elsewhere. Also, nothing in the record leads the Court, inescapably, to the conclusion that Montana has a greater interest in the subject matter of this action than any other state that may have putative class members as citizens. Thus, the Court declines to accord the Wards' choice of forum "substantial" weight, but does accord it some weight.

### B. <u>Convenience of the Parties</u>

15

This factor weighs in favor of transfer.  Montana undoubtedly is more convenient for the Wards, who reside in Montana.  Morgan Drexen, however, represents that it operates in the Central District of California "with its hundreds of employees[.]" Court Doc. 29 at 9.  It also notes that the Wards have identified in their Amended Complaint California resident Walter Ledda and the California law firm of Howard | Nassiri as members of an alleged RICO enterprise.  Id.  Although Ledda and Howard | Nassiri are not yet named in this action, it is possible that they could be in light of the nature of the claim in which they are alleged to be involved.  California is a more convenient forum for them than Montana.

Also, because the Wards bring a putative class action, it is quite possible that Morgan Drexen will be called upon to defend against claims stemming from alleged activities occurring in places other than Montana.  The convenience to Morgan Drexen of being able to defend from one location, in their own district, against potentially multiple plaintiffs, outweighs the convenience to the Wards of prosecuting their claims in Montana.

### C.   **Convenience of Witnesses**

This factor also weighs in favor of transfer.  The Wards, as noted, reside in Montana and the Morgan Drexen associate attorney, Blaine Bradshaw, with whom they dealt briefly, is a Montana lawyer.  Morgan Drexen, on the other hand, has specifically identified more than 45 California-based witnesses that it presently expects have potentially material testimony for trial.  Court Doc. 11-12.  It has provided a brief explanation of the type of information about which most of them would be expected to testify.  Id.  Although transfer of this action to the Central District of California may prove inconvenient for the Wards, that inconvenience is outweighed by the inconvenience to many other witnesses were this action to remain in Montana.  *See George v. Nat'l Collegiate Athletic Ass'n,* 2008 WL 5422882 *4 (C.D.Cal.) (case transferred to Indiana where NCAA identified eight witnesses located in Indiana who possessed significant knowledge concerning the dispute).

### D.   **Ease of Access to the Evidence**

This factor weighs in favor of transfer.  Morgan Drexen represents, and the Wards do not dispute, that witnesses, documents, and other

evidence relating to Morgan Drexen's business operations are in the Central District of California.  Court Doc. 29 at 10; Court Doc. 35 at 10-11 (not disputing that sources of proof are more readily available in California, but arguing that modern practice of transporting documentary evidence makes this factor less important).  While it may be true, as the Wards argue, that most documentary evidence can be easily retrieved and transported electronically, it is equally true that, as noted above, most witnesses for this action are presently located in California.  Thus, this factor weighs in favor of transfer.  *See, e.g., Ventress v. Japan Airlines*, 486 F.3d 1111, 1118-19 (9th Cir. 2007) (affirming order to transfer venue, noting that district court supported conclusion by finding that most documentary evidence was located in location receiving transferred case); *Peralta v. Countrywide Home Loans, Inc.,* 2009 WL 3837235, *8 (N.D. Cal.) (granting motion to transfer the Central District of California where "any documents and tangible evidence defendant used in developing and selling its loan products are presumably located at its facility in the Central District").

### E.    Familiarity of Each Forum With the Applicable Law

This factor is neutral with respect to transfer.  The Wards assert federal claims under RICO and CROA.  No party has argued that one federal court is more familiar with these federal laws than another.  Nor will federal courts generally entertain such arguments.  *See, e.g., Cargill, Inc. v. Prudential Ins. Co. of America*, 920 F.Supp. 144, 148 (D. Col. 1996) (rejecting argument of one court's supposed greater familiarity with ERISA preemption).

### F.   **Feasibility of Consolidation of Other Claims**

This factor is neutral with respect to transfer.  No party has indicated that consolidation of other claims is, or will be, at issue.

### G.   **Any Local Interest in the Controversy**

This factor is neutral with respect to transfer.  No party has argued persuasively that interest in this case is more pervasive in Montana than in any other location where Morgan Drexen does business.

### H.   **Court Congestion and Time of Trial in Each Forum**

Morgan Drexen has submitted evidence from the Administrative

Office of the United States Courts[3] that shows that, in the 12-month

period ending March 31, 2009,  the Central District of California

resolved civil actions more quickly (6.7 months) than did the District of

Montana (10.6 months) when comparing the median number of months

from filing to disposition.  Court Doc. 31 at Exhibit 2.

The submitted statistics also show that, in the 12-month period

ending on March 31, 2009, the median number of months from filing to

trial in Montana was 18.7 months but 19.8 months in the Central

District of California.  From 2001 to 2008, the statistics reflect that in

nearly every six-month period for which a report was issued, the median

number of months from filing to trial in the Central District of

California was less than the median number of months from filing to

trail in the District of Montana.  Id. at Exhibit 3.

Because either district could handle this matter expeditiously, the

Court does not give these statistics great weight.  Nonetheless, to the

_____

[3]Morgan Drexen has filed a Request for Judicial Notice in Support
of Defendant's Motion to Transfer to the Central District of California
Under 28 U.S.C. § 1404(a) in which it asks the Court to take judicial
notice of Federal Judicial Caseload Statistics.  There being no objection
from the Wards and the requisite showing having been made, the Court
grants the request for judicial notice of the statistics.

extent the Court is required to consider this factor, the factor tips slightly in favor of transfer.

## I.   Location Where Relevant Agreements Were Negotiated and Executed

This factor is neutral with respect to transfer.  When any agreements between the Wards and Morgan Drexen were negotiated and executed, presumably the Wards were in Montana and Morgan Drexen representatives were in California.

## J.   Respective Parties Contacts with the Forum

This factor weighs against transfer.  It is reasonable to conclude that the Wards, as residents of Montana, have significant contacts with Montana.  Morgan Drexen undoubtedly does business in Montana, along with most other states.  Thus, it also has contacts with Montana. Morgan Drexen voluntarily submitted itself to the jurisdiction of Montana courts by electing to contact debtors who live here.

## K.   The Contacts Relating to Plaintiffs' Cause of Action in the Chosen Forum

This factor is neutral with respect to transfer.  The parties had

contacts in both forums.  The alleged facts giving rise to the causes of

action involved activities in both the chosen forum and in California,

where Morgan Drexen maintained its business operations.

**L.**   **The Difference in Costs of Litigation in the Two Forums**

This factors weighs in favor of transfer.  For the reasons already

stated above, the location of multiple witnesses and other evidence in

the Central District of California, and potential costs associated with

travel and transportation, necessarily means that costs will be higher if

litigation is held elsewhere.  It is true that litigating this action in

California will be more expensive for the Wards.  Their expense in

litigating outside of Montana, however, does not outweigh the total

expense of litigating outside of the Central District of California.

**M.**   **Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses**

This factor weighs in favor of transfer.  It may be true, as the

Wards argue, that many of Morgan Drexen's identified witnesses are or

have been its employees subject to Morgan Drexen's persuasion to

voluntarily appear in the District of Montana if called upon to testify. It is also true, however, that the Wards have identified other seemingly key witnesses who are not parties to this action, including Walter Ledda, a network of lawyers and law firms with whom Morgan Drexen associates, and the California law firm of Howard | Nassiri. Court Doc. 8 at ¶¶ 3, 5, 25, and 46. Many, if not all, of these witnesses are beyond the subpoena power of the District of Montana, but are within the subpoena power of the Central District of California. See Fed. R. Civ. P. 45(b)(2).

N.   **Summary**

In light of the foregoing, the Court concludes that, on balance, the factors weigh in favor of transfer. While the Court accords the Wards' choice of forum weight in its analysis, their choice is not alone controlling. *Pacific Car and Foundry Co.*, 403 F.2d at 954. Convenience of witnesses, "often the most important factor" courts consider in deciding transfer motions, *Kina*, 2008 WL 5071045 at *6 (citing *Los Angeles Memorial Coliseum Comm. v. Nat'l Football League*, 89 F.R.D. 497, 501 (C.D. Cal. 1981)), tips the balance in favor of transfer. As

noted, although transfer to California may prove inconvenient for the

Wards, that inconvenience is outweighed by other factors considered

herein – especially inconvenience to non-party witnesses were this

action to remain in Montana, and the fact that seemingly key witnesses

would be beyond the subpoena power of the Court.  The availability of

evidence, as discussed, favors transfer.

## IV.   __CONCLUSION__

Based on the foregoing, IT IS RECOMMENDED that Morgan

Drexen's motion to transfer this action to the United States District

Court for the Central District of California under 28 U.S.C. § 1404(a)

(Court Doc. 28) be GRANTED and that this case be transferred to the

United States District Court for the Central District of California.

Because the Court recommends transfer, the motion to dismiss

and to strike (Court Doc. 25) is more properly addressed by the

transferor court.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall

serve a copy of the Findings and Recommendation of United States

Magistrate Judge upon the parties.  The parties are advised that

pursuant to 28 U.S.C. § 636, any objections to the findings and

recommendation must be filed with the Clerk of Court and copies served

on opposing counsel within fourteen (14) days after receipt hereof, or

objection is waived.

DATED this 26th day of May, 2010.


/s/ Carolyn S. Ostby
United States Magistrate Judge